FILED
2017 Nov-16  AM 09:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

JET/EWB November 2017

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No:** |
| | ) | **FILED UNDER SEAL** |
| **MARSHALL DAVID NEIPERT,** | ) | |
| **Defendant.** | ) | |

## INFORMATION

The United States Attorney charges that:

At all times material to this Information:

## INTRODUCTION

1.      Bitcoin are an electronic medium of exchange, or a form of virtual currency.  Unlike fiat currencies, such as the United States Dollar, Bitcoin do not exist in any physical form.  Bitcoin exist solely as entries on a publicly available electronic ledger that records all Bitcoin transactions ever conducted.  Unlike most fiat currency, Bitcoin is not issued or controlled by any government, bank, or company, but rather is generated and controlled automatically through computer software operating on a decentralized, "peer-to-peer" network.  Bitcoin is a convertible currency meaning that it has an equivalent value in fiat currency, and users can exchange it for fiat currency.  The exchange rate for Bitcoin is not determined by any government or centralized entity rather it floats on the open market.

2.     To acquire Bitcoin, a user must "mine" or create it, accept it as payment for goods or services, or purchase it for fiat currency from a Bitcoin exchanger.

3.     Bitcoin are "mined" when "miners" utilize computing power to verify and confirm a block of Bitcoin transactions on the publicly available electronic ledger. The Bitcoin software pays "miners" for this service by awarding them newly created Bitcoins on the electronic ledger. Mining Bitcoin requires the "miner" to utilize extensive computer processing power. As such, most users obtain their Bitcoin from exchangers or via trade.   In return for a commission, Bitcoin exchangers exchange conventional fiat currency for a corresponding number of Bitcoin based on the fluctuating exchange rate.

4.     When a user acquires Bitcoin from an exchanger, the Bitcoin exchanger sends Bitcoin from his or her public Bitcoin "address" to the user's public Bitcoin "address."  An "address" is akin to a bank account number and is a complex string of letters and numbers.  To conduct a Bitcoin transaction, neither the payor nor the payee must submit any identifying information.  The only information needed is the two public Bitcoin addresses.  Bitcoin addresses by themselves do not reflect any identifying information, and users can obtain Bitcoin addresses from certain platforms anonymously. A private key or password is needed to transfer Bitcoin from a given public address.  Bitcoin users can maintain their public addresses and

2

their private keys in virtual "wallets" housed on their phones, computers, flash drives, or other media.

5.     Bitcoin are not inherently illegal and have known legitimate uses. However, they are the preferred form of payment, and often the only form of payment, on various anonymous internet marketplaces and forums for illegal goods. Individuals commonly use Bitcoin to facilitate illicit transactions and to launder criminal proceeds due to the ease with which individuals can use them to move money anonymously.

6.     Bitcoin exchange businesses are money-transmitting businesses and must comply with the money transmitting business registration requirements under Title 31, United States Code, Section 5330 and the regulations prescribed thereunder to operate lawfully.  Licensed money transmitting businesses are required to make efforts to know their customers, or collect identifying information about the people with whom they are doing business.

## COUNT ONE
### Operating an Unlicensed Money Transmitting Business
### [18 U.S.C. § 1960 and 2]

7.     The allegations contained in the Introduction of this Information in paragraphs 1-6 are hereby re-alleged and restated as though fully set forth herein.

8.     From on or about August 2012 to on or about October 2016, the exact dates being unknown to the United States Attorney, in the Northern District of Alabama, and elsewhere, the defendant,

**MARSHALL DAVID NEIPERT,**

aided and abetted by others known and unknown to the United States Attorney, did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business, as that term is defined in Title 18, United States Code, Sections 1960(b)(1)(B) and (b)(1)(C), in that it failed to comply with the money transmitting business registration requirements under Title 31, United States Code, Section 5330 and the regulations prescribed thereunder, and involved the transportation and transmission of funds that were known to the defendant to have been derived from a criminal offense and were intended to be used to promote or support unlawful activity, which affected interstate and foreign commerce in any manner and degree, to wit: the defendant operated a business exchanging the virtual currency known as Bitcoin and United States Currency for a commission by (1) transferring or causing the transfer of Bitcoin from Bitcoin addresses under his business's custody and control to Bitcoin addresses designated by his customers in exchange for his customers transferring United States Currency to bank accounts or post office boxes under his business's custody and control, and (2) accepting the

transfer of Bitcoin to Bitcoin addresses under his business's custody and control in exchange for transferring United States Currency to addresses designated by his customers, all in violation of Title 18, United States Code, Section 1960 and 2.

## COUNT TWO
### Conspiracy to Launder Monetary Instruments
### [18 U.S.C. § 1956(h)]

9.      The allegations contained in the Introduction of this Information in paragraphs 1-6 are hereby re-alleged and restated as though fully set forth herein.

10.     From in or about August 2012, though in or about October 2016, the exact dates being unknown to the United States Attorney, in the Northern District of Alabama and elsewhere, the defendant,

## MARSHALL DAVID NEIPERT,

and others known and unknown to the United States Attorney, did knowingly combine, conspire, confederate and agree together to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is distribution and possession with intent to distribute controlled substances in violation of Title 21, United States Code Section 841(a) and operation of an unlicensed money transmitting business in violation of

Title 18, United States Code Section 1960(a), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## MANNER AND MEANS

11.     It was part of the conspiracy that NEIPERT and others solicited customers via the internet and other means to engage in exchanges of Bitcoin and United States Currency.

12.     It was further part of the conspiracy that NEIPERT and others used anonymous means to communicate with their customers.

13.     It was further part of the conspiracy that NEIPERT and others set up business entities.

14.     It was further part of the conspiracy that NEIPERT and others set up post office boxes and bank accounts in the names of these business entities to accept transfers of United States Currency.

15.   It was further part of the conspiracy that NEIPERT and others concealed the true purpose of these business entities from financial institutions and others.

16.   It was further part of the conspiracy that NEIPERT and others accepted transfers of United States Currency from customers, to bank accounts and post office boxes under NEIPERT and his co-conspirators' custody and control, in exchange for transferring Bitcoin from Bitcoin addresses under their custody and control, to Bitcoin addresses designated by their customers via interstate wire transmissions.

17.   It was further part of the conspiracy that NEIPERT and others transferred United States Currency through the mail, to addresses designated by their customers, in exchange for their customers, transferring Bitcoin from Bitcoin addresses under their custody and control, to Bitcoin addresses under NEIPERT and his co-conspirators' custody and control via interstate wire transmissions.

18.   It was further part of the conspiracy that NEIPERT and others accepted transfers of United States Currency from an undercover United States Secret Service Agent (hereinafter "the UC") to bank accounts and post office boxes under their custody and control, in exchange for transferring Bitcoin from Bitcoin addresses under their custody and control to Bitcoin addresses designated by the UC via interstate wire transmissions.

19.     It was further part of the conspiracy that NEIPERT and others transferred United States Currency through the mail, to a post office box designated by the UC, in exchange for the UC transferring Bitcoin from Bitcoin addresses under the UC's custody and control, to Bitcoin addresses under NEIPERT and others custody and control via interstate wire transmissions.

20.     It was further part of the conspiracy that NEIPERT and others met with the UC in person to exchange United States Currency and Bitcoin.  NEIPERT and others accepted United States Currency from the UC and then transferred Bitcoin from Bitcoin addresses under their custody and control, to Bitcoin addresses designated by the UC via interstate wire.

21.     It was further part of the conspiracy that NEIPERT and others profited by accepting commissions of a percentage of the value of the transaction.

22.     It was further part of the conspiracy that NEIPERT and others deposited these commissions into bank accounts in the names of their business entities and then transferred these commissions between and among other bank accounts in the names of their business entities to conceal the ownership, nature, source, and location of the commissions.

23.    It was further part of the conspiracy that NEIPERT and others commingled these commissions with their income from legitimate sources to further conceal the ownership, nature, source, and location of the commissions.

24.    It was further part of the conspiracy that NEIPERT and others used these commissions to purchase precious metals, real estate, and other things of value and to pay off personal loans to further conceal the ownership, nature, source, and location of the commissions.

All in violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF FORFEITURE
### [18 U.S.C. § 982(a)(1)]

1.    The allegations contained in COUNTS ONE and TWO of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

2.    Upon conviction of the offenses charged in COUNTS ONE and TWO of this Information, in violation of Title 18, United States Code, Sections 1956 and 1960, the defendant,

**MARSHALL DAVID NEIPERT,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense,

and any property traceable to such property, including, but not limited to the following:

    a.    <u>United States Currency</u>

        i.    $502,368.64 in U.S. currency seized from NEIPERT at the time of arrest on or about October 13, 2016;

        ii.    $130,187.00 in U.S. currency seized from 19 Wilderness Trail, Friendswood, Texas 77546 on or about October 13, 2016;

        iii.    $26,700.00 in U.S. Currency seized from packages in UPS box 340 and 352 at 133 Friendswood Dr., Friendswood, Texas 77546, on or about October 13, 2016;

        iv.    $10.00 in U.S. Currency seized from the center console of NEIPERT's Dodge Ram truck on or about October 13, 2016;

        v.    $48,973.17 funds transferred by NEIPERT to the United States Secret Service Undercover Account on or about October 13, 2016;

    b.    <u>Bitcoin</u>

        i.    515.33 Bitcoin seized from NEIPERT's Trezor Bitcoin safe.  Per the Bitcoin blockchain, this transfer occurred on or about October 15, 2016, under transaction hash 5d51aac703139fe0bb e0ddbb7fa78a378da869576ba8db068d981c25524c6a38;

        ii.    92.22552736 Bitcoin seized from NEIPERT'S Computer "Electrum_2" wallet.  Per the Bitcoin blockchain, this transfer occurred on or about October 15, 2016, under transaction hash b96b74ffb14a5c0d3e09c9a77c44a6ec99a2b85e153165915 614f925e70d0040;

     iii.    48.99904 Bitcoin seized from NEIPERT'S Computer "Electrum_wallet." Per the Bitcoin blockchain, this transfer occurred on or about October 15, 2016, under transaction hash 1e2630a4e336ec02ca3568b4beef3db200fd3f2d7e126ef28c77c3 ed10cb4317;

     iv.    29.45052843 Bitcoin seized from NEIPERT'S Computer "Electrum_incoming" wallet. Per the bitcoin blockchain, this transfer occurred on October 15, 2016, under transaction hash cf74e3dd46d00a3caf3be8ba2f5509f0c3463be65981bdd083a80 5fe5ccb0f3f;

     v.    13.21317253 Bitcoin seized from NEIPERT'S Mobile_ Samsung_Mycelium_Wallet 1. Per the Bitcoin blockchain, this transfer occurred on or about October 15, 2016, under transaction hash 55bc488a3d9d971a452591f835d47abe6170b2883d653202 8423ea0af0f4785d;

     vi.    9.29979838 Bitcoin seized from NEIPERT's Computer "Electrum_3" wallet. Per the bitcoin blockchain, this transfer occurred on or about October 15, 2016, under transaction hash 7c2064fb6da7f99f8dfa9d32ea208b4844cd9c22bca93c8b6101f4 e70328b63b.

c.    <u>Bitcoin Storage Devices</u>

     i.    Bitcoin iron key storage device with a bag of removable keys from the safe located in bedroom 3 of 19 Wilderness Trail Friendswood, Texas 77546, on or about October 13, 2016;

     ii.    Keep Key Bitcoin Safe, unknown serial number black in color, with cord seized from 19 Wilderness Trail Friendswood, Texas 77546 on or about October 13, 2016;

     iii.    Trezor Bitcoin Safe with cord seized from the entry/foyer of the main residence of 19 Wilderness Trail Friendswood, Texas 77546, on or about October 13, 2016;

    d.    <u>Electronic Equipment</u>

        i.    Huawei Nexus cell phone, serial number XV7N1631000443 seized from NEIPERT on or about October 13, 2016;

        ii.    Dell laptop, serial number DPNG9NYFA01 seized from NEIPERT on or about October 13, 2016;

        iii.    Thumb drive seized from NEIPERT on or about October 13, 2016;

    e.    <u>Firearm</u>

        i.    Smith and Wesson, model: Bodyguard .380 caliber semi-automatic pistol, serial number EBJ6801, and accompanying ammunition seized from NEIPERT at the time of his arrest on or about October 13, 2016;

    f.    <u>Money Counting and Packing Material</u>

        i.    Money wrappers and vacuum sealing material seized from 19 Wilderness Trail Friendswood, Texas 77546 on or about October 13, 2016;

    g.    <u>Real property</u>

        i.    Real property located at 14706 Sun Harbor Drive Houston, Texas 77062;

    h.    <u>The following precious metals seized from a safe located inside 19 Wilderness Trail Friendswood, Texas 77546</u>

        i.    One 1908 US Indian Cent, Good, corroded;

        ii.    One 1889 US Indian Cent, VG;

        iii.    One 1882 US Barber Dime, Good;

iv.      One 1971 Apollo 14 mini silver token, FM;

v.       One 1978 Panama $75. Gold (.500) Coin, Proof;

vi.      Thirty eight  1/10 oz. US Gold Eagles, mixed date;

vii.     Twelve 1/10 oz. Australia Gold;

viii.    One 1/10 oz. US Gold Eagle;

ix.      Four 1/10 oz. Gold mixed;

x.       One 2014 1 oz. US Gold Buffalo;

xi.      Two 2013 1 oz. Canada Gold Maple leafs;

xii.     Ten 1 oz. Canada Gold Maple leafs, mixed dates;

xiii.    Ten 1 oz. S.A. Gold Krugerrands;

xiv.     One 1 oz. Canada Gold;

xv.      Twenty 1 oz. US Gold Eagles, mixed dates;

xvi.     Twenty 1 oz. S.A. Gold Krugerrands, mixed dates;

xvii.    Nineteen 1 oz. US Gold Buffalo's, mixed dates seized from a safe
         located in bedroom 3 of the main residence of 19 Wilderness
         Trail Friendswood, Texas 77546 on October 13, 2016;

xviii.   One 2011 US Gold 1 oz. Buffalo;

xix.     One 2013 US Silver 1 oz. Eagle;

xx.      One 2014 1 oz. Gold Australia Horse;

xxi.     One 1947 50 Peso Mexico Gold, cleaned, seized from a safe located in bedroom 3 of the main residence of 19 Wilderness Trail Friendswood, Texas 77546 on October 13, 2016;

xxii.    Three 1945 2 Peso Mexico Gold;

xxiii.   One 1945 2- 1/2 Peso Mexico Gold;

xxiv.    One 1859 BB 20 Francs Gold, XF cleaned;

xxv.     Two 2014 1/4 oz. US Gold;

xxvi.    Two  2013 1/2 oz. US Gold;

xxvii.   Three 1 oz. US Gold, mixed dates seized from a safe located in bedroom 3 of 19 Wilderness Trail Friendswood, Texas 77546 on October 13, 2016;

xxviii.  One 1977 S.A. 1 oz. Gold Krugerrand;

xxix.    Three 2003 1 oz. US Gold Eagles;

xxx.     Twenty 2016 US 1 oz. Gold Buffalo's on Mint Sheet seized from a safe located in bedroom 3 of the main residence of 19 Wilderness Trail Friendswood, Texas 77546 on October 13, 2016;

xxxi.    Four rolls each containing twenty pieces each of "OPM" rounds .999 Silver rounds;

xxxii.   Ten rolls each containing "Buffalo" rounds .999 Silver rounds;

xxxiii.  Twelve Buffalo .999 rounds seized from a safe located within bedroom 3 of the main residence of 19 Wilderness Trail Friendswood, Texas 77546 on October 13, 2016;

xxxiv.   Six "OPM" rounds .999 Silver rounds;

14

xxxv.        One Maria Teresa Austrian Thaler Souvenir Coin Silver;

xxxvi.       Thirty US Silver Dollars;

xxxvii.      Two US Ike Dollars;

xxxviii.     Three $10.00 Rolls of Common Kennedy Half Dollars;

xxxix.       One 1996 $2.00 Canada Coin;

xl.          Fifty six 1964 US Kennedy 90% Silver Half Dollars;

xli.         Two 1965 US Kennedy 40% Silver Half Dollars;

xlii.        Two US Silver Dollars (1882- S, AG. & 1901-S);

xliii.       Three 1922 US Peace Dollars, circulated;

xliv.        One 1948 Mexico 5 Peso .900 Silver coin;

xlv.         One Silver Token, .999 1/2 oz.;

xlvi.        Seventy-two US Walking Liberty Half Dollars, Common circulated;

xlvii.       189 US Benjamin Franklin Half Dollars, Common circulated;

xlviii.      Eight S1. SBA Dollars (1979 - 1980);

xlix.        Seventy-seven $1. Coins, "Modern- Current" (2000 - Present);

i.     A money judgment in the amount of $9,500,000.00.

3.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

15

    b.      has been transferred, sold to, or deposited with a third person;

    c.      has been placed beyond the jurisdiction of this Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be subdivided without difficulty;

The United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), up to the value of the forfeitable property.

JAY E. TOWN
United States Attorney

/s/ Electronic Signature
ERICA WILLIAMSON BARNES
Assistant United States Attorney